AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

United States of America )
v. )
)
Querubin Martinez ) Case No. 8:25MJ1388CPT
Mario Dominguez )
)
)
)
_____ )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____February 25, 2025_____ in the county of _____Hillsborough_____ in the
_____Middle_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 46 U.S.C. §§ 70503(a) and 70506 (a); 21 U.S.C §§ 960(b)(1)(B)(ii) | Possess with the intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States; Possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine. |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

*Yenixa Perez*
*Complainant's signature*

SA Yenixa Perez, HSI
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me
pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: **FEBRUARY 28, 2025**

*Christopher P. Smith*
*Judge's signature*

City and state:          Tampa, FL          Hon. Christopher P. Tuite, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your affiant, Yenixa Pérez, being duly sworn, deposes and states the following:

1.      I submit this affidavit in support of a criminal complaint charging two individuals-Querubin **MARTINEZ** and Mario **DOMINGUEZ**-with knowingly and willfully conspiring to possess with the intent to distribute five kilograms or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), and possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 46 U.S.C. §§ 70503(a) and 70506(a), and 21 U.S.C §§ 960(b)(1)(B)(ii).

2.      I have been a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") since 2010. I have participated in and received training with respect to the investigations of organizations and individuals involved in illegal drug trafficking activities, including those involved in the maritime smuggling of shipments of cocaine in the Eastern Pacific Ocean and elsewhere.  I have worked as a Special Agent with Operation Panama Express Strike Force since October 2019. Operation Panama Express is a federally approved Organized Crime Drug Enforcement Task Force ("OCDETF") investigation being conducted by the Drug and Enforcement Agency ("DEA"), the Federal Bureau of Investigations ("FBI") and the United States Coast Guard ("USCG"). Investigations initiated by Operation Panama

Express are prosecuted in the Middle District of Florida (Tampa Division). Special Agents assigned to Operation Panama Express currently investigate drug smuggling organizations that are responsible for the transportation of contraband through international waters of the Caribbean Sea and Eastern Pacific Ocean (via vessel) to transshipment locations for later introduction and distribution to the United States.

3.      Operation Panama Express is a Federal Organized Crime Drug Enforcement Task Force ("OCDETF") composed of the following agencies: Homeland Security Investigations ("HSI"), Drug Enforcement Administration ("DEA"), Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement, United States Coast Guard ("USCG"), United States Attorney's Office (USAO) of the Middle District of Florida and CGIS.  Special Agents assigned to Operation Panama Express investigate Transnational Criminal Organizations that use maritime conveyances, like go-fast vessels, to smuggle illicit drugs through international waters of the Pacific Ocean and Caribbean Sea for later distribution into the United States of America.

4.      Based on my training and experience as a Special Agent with HSI, I have conducted investigations concerning violations of Title 21, United States Code, Sections 959 and 960, which prohibit the production, transportation, importation, distribution and possession of illegal drugs, including cocaine, and violations of Title 46 Appendix, United States Code, Section 70503 (the Maritime Drug Law Enforcement Act), which prohibits drug trafficking on the high seas, including the possession with intent to distribute cocaine on vessels subject to the jurisdiction of

2

the United States. Through these investigations, I have become familiar with the means and methods narcotics traffickers use to transport, import and distribute illicit drugs, as well as the support and assistance that narcotics organizations require to conduct their illegal activities.

5.    The information contained herein is either personally known to me or has been provided to me by other law enforcement officers with whom I have worked on this investigation. This affidavit is submitted for the limited purpose of establishing probable cause for the criminal charges set forth herein and, therefore, does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

6.    The USCG has the authority under 14 U.S.C. § 522 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce federal laws.

## PROBABLE CAUSE

7.    On or about February 25, 2025, a patrol aircraft spotted a target of interest eighty (80) nautical miles northwest of Aruba in international waters. The target of interest was a panga-style vessel with two people onboard with packages and fuel barrels visible on the deck of the vessel. The vessel did not display a flag and no indica of nationality were visible.  The HNLMS GRONIGEN was patrolling nearby with a Coast Guard law enforcement team onboard and launched two small boats and a helicopter to intercept the vessel.

3

8.     The GRONIGEN requested and Coast Guard District 7 (D7) granted a Statement of No Objection (SNO) for a Right of Visit (ROV) boarding on a vessel suspected of illicit maritime activity, reasonably suspected of being without nationality, and displaying no indicia of nationality, located in international waters.

9.     When the helicopter approached the vessel, it signaled for the vessel to stop, and the vessel stopped. While the helicopter was overhead, the vessel got back underway, and the crew of the helicopter utilized warning shots to stop the vessel. When the vessel stopped the second time, the small boats arrived on scene and the Coast Guard small boat obtained positive control of the GFV in position 14-22.5N 070-30.47W (international waters).

10.    The Coast Guard conducted a Right of Visit Boarding which yielded no indicia of nationality and no valid claims of nationality. No master was identified and neither of the individuals claimed a nationality for the vessel.  The Coast Guard confirmed that there were two people onboard the vessel–Querubin **MARTINEZ** and Mario **DOMINGUEZ**–and both claimed Dominican Republic nationality for themselves.

11.    Based on the lack of claim of nationality for the vessel, Coast Guard D7 granted an SNO to treat the vessel as without nationality and subject to the jurisdiction of the United States and authorized a full law enforcement boarding of the vessel. During the boarding, the vessel began to sink rapidly, and the Coast Guard transferred the two people onboard and the suspected contraband to the small boat for their safety.

4

12.    The Coast Guard conducted two narcotics identification field tests on a bale from the vessel.  Both field tests were positive for cocaine.  The GRONIGEN requested and Coast Guard D7 granted an SNO to treat the two individuals as detainees and transfer them and the contraband to the GRONIGEN. The Coast Guard treated the two people as detainees and recovered 7 bales of suspected cocaine. The suspected cocaine had an at-sea weight of approximately 247 kilograms.

13.    The Coast Guard transported the two individuals and the suspected cocaine to the GRONIGEN, and the vessel sank shortly thereafter.

## CONCLUSION

14.     Based on my training, experience, and knowledge of the investigation, I

believe that there is probable cause to believe that the two defendants named above

knowingly and willfully conspired with each other and other persons to possess with

intent to distribute five kilograms or more of cocaine, while on board a vessel subject

to the jurisdiction of the United States, in violation of Title 46, United States Code,

Sections 70503 and 70506, and Title 21, United States Code, Section 960(b)(1)(B)(ii).


_____
Yenixa Pérez
Special Agent
Homeland Security Investigations


Affidavit submitted to me by reliable electronic means and attested to me as true and
accurate by telephone or other reliable means consistent with Fed. R. Crim. P. 4.1
and 4(d) before me this __28__ day of February, 2025.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

6